Caleb **MELBERG**, Plaintiff,

v.

**PLAINS MARKETING, L.P.**, Defendant.

No. A4–03–20.

United States District Court, D. North Dakota, Northwestern Division.

Aug. 13, 2004.

---

David S. Maring, Maring Williams Law Office, PC, Bismarck, ND, for plaintiff.

Patrick W. Durick, Pearce & Durick, Bismarck, ND, for defendant.

### ORDER

HOVLAND, Chief Judge.

Before the Court are several motions in limine. The Plaintiff's Motion in Limine Regarding Expert Witnesses was filed on July 23, 2004, and concerns the opinions of two expert witnesses retained by the defendant, Plains Marketing, L.P. Specifically, the Plaintiff's motion addresses the opinions of Dr. Craig C. Smith, an accident reconstructionist, and the opinions of Dr. Allan F. Tencer, a biomechanical specialist. In addition, the Defendant's Motion in Limine to Exclude Expert Opinions and Evidence of Dr. Marius Ziejewski, was filed

on July 27, 2004. The Plaintiff's Responsive Memorandum was filed on August 9, 2004. This case is presently scheduled for trial to commence on August 23, 2004.

### I. BACKGROUND

This is a personal injury action arising out of an automobile accident that occurred on March 16, 2001, near Battleview, North Dakota. On that date, it is alleged that the plaintiff, Caleb Melberg, was driving a 1984 Chevy van when he collided with a 1994 International tractor/trailer being driven by Robert Taylor, an employee of Plains Marketing. Melberg allegedly sustained serious and permanent injuries as a result of the accident. Discovery is ongoing and both parties have retained a number of expert witnesses. The expert witnesses who are the subjects of the pending motions in limine are accident reconstruction specialists and biomechanical/mechanical engineers.

### II. LEGAL DISCUSSION

■ Rule 702 of the Federal Rules of Evidence sets forth the standard for expert testimony and provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. Rule 702 requires the trial judge to act as a "gatekeeper" admitting expert testimony only if it is both relevant and reliable. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509

U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The trial court is granted broad discretion in its determination of reliability. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). However, the gatekeeper role should not invade the province of the jury whose job it is to decide issues of credibility and to determine the weight to be accorded such evidence. *See Arkwright Mut. Ins. Co. v. Gwinner Oil Co.*, 125 F.3d 1176, 1183 (8th Cir.1997). Expert testimony should be admitted if it is based on sufficient facts, it "is the product of reliable principles and methods," and "the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702; *see General Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

The Eighth Circuit has set forth three prerequisites that must be met in order for expert testimony to be admitted under Rule 702.

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, "the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires...."

*Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir.2001) (quoting 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 702.02[3] (2001)).

■ In the well-known case of *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the United States Supreme Court held that the "general acceptance" standard articulated in *Frye* was "not a neces-sary precondition to the admissibility of scientific evidence under the Federal Rules of Evidence, but the Rules of Evidence—especially Rule 702—do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597, 113 S.Ct. 2786. The Supreme Court has also held that the principles set forth in *Daubert* apply to all expert testimony. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) ("We conclude that *Daubert's* general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."); *accord Jaurequi v. Carter Manufacturing Co. Inc.*, 173 F.3d 1076, 1082 (8th Cir.1999). It is well-established that decisions concerning the admission of expert testimony lie within the broad discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 296 (8th Cir.1996).

### A. DR. CRAIG C. SMITH—DEFENDANT'S ACCIDENT RECONSTRUCTIONIST

■ The plaintiff contends there are serious problems with Dr. Smith's opinions which relate to two primary topics; namely, (1) the speed of the Melberg van prior to braking, and (2) Melberg's "ability to react" to the danger which is based on the speed calculation. Melberg acknowledges that Dr. Smith has sufficient facts and data and that Dr. Smith uses an accepted and reliable methodology. However, Melberg contends that the problem with the reconstruction of the speed of the van is that Dr. Smith does not apply the method he uses reliably to the facts of the case. Specifically, Melberg contends the problems

with Dr. Smith's opinions are set forth in the following paragraph taken from his "Summary of Findings."

> From the damage to the two vehicles, as compared to vehicle crush determined from a barrier crash test of a vehicle of the same structural design and construction as Mr. Melburg's (sic) vehicle, I estimate his speed at the time of the collision to be about 60 mph. Considering the braking prior to the collision as indicated by the skid marks left at the scene of the accident, his speed prior to braking is estimated to be about 76 mph. Since the mathematical model used to perform these calculations extrapolates to these speeds from collision data from a barrier test at 35 mph, there is some uncertainty in these calculations. I estimate the uncertainty to be of about 10 mph in estimating the collision speed. Based upon the lower collision speed of 50 mph, Mr. Melburg's (sic) speed prior to braking is calculated at 68 mph. In conclusion, I am reasonably confident that Mr. Melburg (sic) was going near or above the speed limit of 65 mph prior to the accident.

Dr. Smith acknowledged in his report that he extrapolated the 60–mph collision speed based upon data obtained from a barrier test at 35–mph and that "there is some uncertainty in these calculations." Dr. Smith estimates the "uncertainty to be of the order of about 10 mph in estimating the collision speed." Dr. Smith initially estimated Melberg's speed prior to braking "to be about 76 mph." He then revised the speed calculations as noted above and opined that Melberg's speed prior to braking was 68 mph after the 10 mph reduction.[1] There is no explanation as to how Dr. Smith reached this opinion because 76 mph less 10 mph is 66 mph—not 68 mph.

In addition, Melberg contends that Dr. Smith has engaged in speculation because he used an inappropriate calculation of the stiffness co-efficient of the van driven by Melberg. It is also alleged that Dr. Smith did not take into consideration the fact this collision occurred at a 30 degree angle rather than perpendicular. As a result, Melberg contends that Dr. Smith's speed calculations of the Melberg van prior to braking (68 mph) are greater than the actual speed of the van. Melberg also contends that although Dr. Smith initially used the correct methodology to compute the speed of the van at the time of the impact, and the speed of the van prior to braking, he applied unreliable facts to that methodology (stiffness, co-efficient, and measurement of crush). Thereafter, Dr. Smith used an inappropriate and unacceptable methodology to adjust the speed of the van at the time of the impact, and the speed of the van prior to braking, to a lower speed. As a result, the Plaintiff maintains that Dr. Smith's opinions are unreliable under the standards of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

In reviewing the totality of the evidence presented, the Court finds that Dr. Smith's opinions are based on sufficient facts and data, and are the product of reliable principles and methods. There are questions concerning whether Dr. Smith has applied the principles and methods reliably to the facts of the case as required under Daubert and Kumho. By Dr. Smith's own admission, there is "uncertainty" in his speed calculations. Dr. Smith estimated the "uncertainty to be about 10–mph." Dr. Smith then revised his speed estimates

---

1. The Plaintiff's expert witness, Dr. Ziejewski, has concluded the range of speed of the Mel-
berg van prior to braking to be between 60.4 mph and 66.2 mph.

prior to braking and opined that Melberg was traveling at a speed of 68 mph prior to braking rather than 76 mph.

The Court finds that the 10–mph speed reduction is suspect. There are also questions concerning whether the opinion as to speed is derived from an application of scientific or technical methods that are acceptable in the field of accident reconstruction.[2] Nevertheless, the opinions of Dr. Smith are based on sufficient facts and data, are the product of reliable principles and methods, and Dr. Smith has arguably applied the principles and methods to the facts of the case. As the Supreme Court stated in *Daubert,* "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. 579, 595, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. Dr. Smith's opinions will be admissible at trial and it will be for the jury to assess his credibility.

## B. DR. ALLAN F. TENCER—DEFENDANT'S BIOMECHANICAL ENGINEER

■ Dr. Allan Tencer is an expert witness retained by Plains Marketing who submitted a two-page report dated February 27, 2004. Dr. Tencer has opined that if Caleb Melberg had been wearing a safety belt at the time of the accident, there "was probably not sufficient space remaining after the vehicle crushed during the collision to prevent impact of his knees against the dash and the resulting bilateral hip dislocations" but there "was probably

enough space remaining in Mr. Melberg's Chevy van so that had he been wearing a lap and shoulder belt he would not have sustained significant head trauma." Melberg does not object to Dr. Tencer's opinion that there was insufficient space remaining after the vehicle crushed such that Melberg would have sustained knee and hip injuries even if he had been wearing a safety belt. However, Melberg does object to Dr. Tencer's opinion that the head injuries Melberg sustained would have been less severe if he had been wearing a safety belt. Melberg contends that Dr. Tencer did not follow an established methodology and maintains that his opinion is speculative and not based on reliable facts.

The Court has carefully reviewed Dr. Tencer's report. The Court finds that Dr. Tencer's opinions are based on sufficient facts and data, are the product of reliable principles and methods, and that Dr. Tencer has applied the principles and methods reliably to the facts of the case as required under *Daubert* and *Kumho.* The Court further finds that with respect to Dr. Tencer's opinions, it is the province of the jury to decide issues of credibility and to determine the weight to be accorded his opinions and his biomechanical analysis of the accident.

## C. DR. MARIUS ZIEJEWSKI—PLAINTIFF'S MECHANICAL ENGINEER

■ The Defendant filed a Motion in Limine on July 27, 2004, to exclude the expert opinions and evidence of Dr. Marius Ziejewski, a mechanical engineer retained by the Plaintiff. Plains Marketing moves

---

**2.** In the Defendant's Reply to Plaintiff's Motion in Limine filed on August 2, 2004, there was no discussion concerning Dr. Smith's "uncertain" speed calculations prior to braking. No explanation was provided as to how

Dr. Smith concluded that the revised speed prior to braking was 68 mph rather than 66 mph (76–10). In addition, the Court was not provided with a copy of Dr. Smith's deposition.

the Court for an order excluding the testimony of Dr. Ziejewski in the following respects:

a) to exclude testimony of crush measurements of the 1984 Chevrolet van involved in this accident other than the measurement provided in the Plaintiff's Expert Witness Disclosures dated March 1, 2004;

b) to exclude the testimony of Dr. Ziejewski based on two simulation runs of the Articulated Total Body (ATB) computer simulation program as disclosed in Plaintiff's Expert Witness Disclosures dated March 1, 2004; and

c) to exclude the testimony of Dr. Ziejewski based on NHTSA Frontal Crash Test Video No. 978 and NHTSA Frontal Crash Test Video No. 1671, including the entry into evidence of Plaintiff's Exhibits P82 and P83.

As the Eighth Circuit has articulated, the first prerequisite that must be met in order for expert testimony to be admitted under Rule 702 is whether the testimony is based on scientific, technical, or other specialized knowledge that would be useful to the finder of fact in deciding the ultimate issue of fact. *Lauzon*, 270 F.3d 681, 686. Expert testimony as to the speed of the vehicles and the nature and extent of Melberg's injuries would be of assistance to the jury. Testimony of this nature would be based on scientific, technical, or other specialized knowledge. The Court finds the testimony of expert witness Ziejewski would satisfy the first prerequisite under Rule 702.

The second prerequisite that must be met in order for expert testimony to be submitted under Rule 702 is whether a proposed witness is qualified to assist a finder of fact. *Lauzon*, 270 F.3d 681, 686. Plains Marketing has stipulated to Dr. Ziejewski's qualifications. Therefore, the second prerequisite has been met. *See* Defendant's Brief in Support of Motion to Exclude Expert Opinions and Evidence of Dr. Marius Ziejewski, p. 23.

The third prerequisite is that "the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires ..." *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir.2001). There are several subject matters that Dr. Ziejewski intends to address at trial and each will be discussed.

## 1. NHTSA FRONTAL CRASH TEST VIDEOS

With respect to the National Highway Traffic Safety Administration (NHTSA) frontal crash test videos that Dr. Ziejewski intends to show to the jury, the crash tests in question were both frontal barrier tests of a van manufactured by General Motors Corporation. The videos depict movements of instrumented dummies in the driver and front passenger seats during a crash event. The test vehicles were equipped with occupant restraint systems and instrumented anthropomorphic dummies with seat belts and shoulder harnesses. The actions of the dummies during the crash event were documented by a standard motion picture camera and several high-speed motion picture cameras. The Court finds that the events depicted in the motion pictures of the dummies are different than the events of the collision at issue in this litigation. Specifically, the NHTSA crash tests were frontal collisions with no offset, whereas the collision in this case involved an offset of 30 degrees from the direction of a roadway. The dummies are restrained by the occupant restraint system whereas Melberg was unbelted and unrestrained. In this case there were significant skid marks before the collision

which indicate that Melberg at some point became aware of the truck in his path and reacted to the imminent collision. Anthropomorphic dummies do not react to outside stimuli.

 The Court expressly finds that the NHTSA Frontal Crash Test videos do not depict conditions substantially similar to the conditions involved in the collision that occurred in North Dakota on March 16, 2001. The Court further finds that even if the crash test videos are deemed to be relevant, the evidentiary value of displaying the videos is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading of the jury as enumerated under Rule 403 of the Federal Rules of Evidence. Dr. Ziejewski and Dr. Smith will be allowed to testify concerning the NHTSA crash tests but the Court will not allow the test videos involving anthropomorphic dummies to be shown to the jury.

### 2. ATB COMPUTER SIMULATION PROGRAM

 The Articulated Total Body (ATB) computer simulation program is a research tool used to simulate the dynamic motion of jointed systems of rigid bodies. The program is used primarily to interpolate and extrapolate the results of full-scale tests with anthropomorphic test dummies. The Defendant has stipulated that the ATB computer simulation program has been properly verified. However, the Defendant contends there is virtually no evidence to suggest the ATB program model has been validated for use in simulating the movement of real-life, adult passengers in automobile collisions. In a supplemental affidavit filed with the Court, Dr. Ziejewski has refuted each of the allegations made by the Defendant.

The Court finds that the ATB computer simulation program and exercise is somewhat suspect. However, the ATB pro-gram is apparently widely accepted as a tool for predicting the severity of automobile collisions on human occupants. As noted by Dr. Ziejewski, the National Highway Traffic Safety Administration and the United States Air Force rely on the ATB computer simulation program. The Court finds that such evidence is arguably reliable and would assist the trier of fact to understand the evidence or to determine a fact in issue. As a result, Dr. Ziejewski will be allowed to testify at trial concerning the two simulation runs of the ATB computer simulation program.

### 3. EDCRASH COMPUTER SIMULATION PROGRAM

 Finally, Dr. Ziejewski has opined on the initial speed of the vehicle and dynamics of the accident based on simulations from EDCRASH (Engineering Dynamics Corporation Reconstruction of Accident Speeds on the Highway), a proprietary computer simulation program. Plains Marketing does not object to the use of the EDCRASH computer simulation program in the analysis of the accident. Instead, Plains Marketing objects to the crush measurements used by Dr. Ziejewski as used in a second supplemental run of EDCRASH which were not disclosed in a timely manner. The record reveals that Dr. Ziejewski made an error in the weight of the van in his original report. He knew a more accurate weight of the van required a supplemental report and in preparing his supplemental report, Dr. Ziejewski allegedly used new crush measurements to support his opinions. Plains Marketing requests that the Court issue an order prohibiting Dr. Ziejewski from testifying or using, as a basis for his opinions, any crush measurements of the van other than those originally disclosed to the Defendant; namely, 29.0 inches on the driver's side of the van and 24.0 inches on

the passenger side of the van. The Court declines to do so.

The record indicates that Dr. Ziejewski's supplemental disclosure, and the basis for his revised opinions, have been fully disclosed at this stage of the litigation. If counsel for Plains Marketing believes there has not been a full disclosure, and/or there is a need to schedule a supplemental deposition of Dr. Ziejewski prior to trial to fully explore his revised opinions, then Dr. Ziejewski shall be made available for a deposition as soon as reasonably possible prior to trial, at Plaintiff's expense. If Dr. Ziejewski is now attempting to change the "hard" facts of this case to support his revised opinions, rather than basing his opinions on the "hard" facts, that is a credibility issue for the jury to resolve at trial.

## III. CONCLUSION

In summary, the Court will not allow the jury to view the NHTSA Frontal Crash Test videos at trial but Dr. Ziejewski and Dr. Smith will be allowed to testify concerning the results of the crash tests. With respect to the remaining evidence sought to be excluded under *Daubert,* the Court denies the motions in limine at this stage. The expert opinions of both Dr. Smith and Dr. Ziejewski concerning the speed of the Melberg van prior to braking are somewhat suspect and rest on less than a firm foundation. The opinions, however, are remarkably close. Dr. Ziejewski's opinion is that the range of speeds the Melberg van could have been traveling prior to braking was 60.4 mph–66.2 mph. Dr. Smith has opined that the speed of the van was in the range of 68 mph which, according to Dr. Smith, equates to "about 76 mph" less "about 10 mph". The expert opinions are weak but, as pointed out in *Daubert,* the appropriate means of attacking shaky but admissible evidence is through cross-examination and the presentation of contrary evidence. The opinions are based on sufficient facts and data, are the product of reliable principles and methods, and the experts have applied the principles and methods reliably to the facts of the case as required under *Daubert.* It is the province of the jury to decide issues of credibility and to determine the weight to be accorded the expert opinions. The Court will exercise its discretion and, with reluctance, will refrain from a wholesale rejection of the expert testimony. The jury will be allowed to sift through the maze of opinions proffered in this case by the accident reconstructionists and engineers.